The next matter, No. 25-1131, Lucia Urizar-Mota et al. v. United States. At this time, would counsel for the Appellant, United States, please introduce himself on the record to begin. Good morning, Your Honors. My name is Kevin Bolin. I represent the Appellant, United States, and may it please the Court, may I reserve two minutes for rebuttal. You may. The government presents four issues on appeal and asks this Court to reverse the judgment below. First, the District Court erred, as a matter of law, in finding that Urizar-Mota's administrative claim presented separate claims for each of her children, the Reyes plaintiffs. But she signed her claim only on her own behalf. She did not identify her children by name or number. She did not state a sum certain for their injuries. When HHS denied her claim, acknowledging her as the only claimant, they could have filled those gaps, and they did not. This Court has not, for purposes of notice in FTCA cases, our President is not going to get hyper-technical. So, based on our President, isn't that enough? Your Honor, it is not enough because the flexible approach that this Court applied in Santiago Ramirez involved an analogous situation. The claimant identified herself as a claimant, what her injuries were, and a sum certain. But this Court held that her husband, just because of his existence, wasn't sufficient for them to have presented a claim on his behalf, too. And that forecloses the result. So, at a minimum, she would have had to say, on behalf of myself and my family, or on behalf of my children, at least a minimum notice. Correct, Your Honor. Should it matter here that the persons in question were minors as opposed to the husband in Santiago Ramirez? It should make no difference because there was a representative for the claimant below and the Reyes plaintiffs who was making this claim. This was not a pro se case. The District Court also excused the Reyes plaintiffs from filing a separate claim because a loss of consortium claim, which is the claim that they pleaded at trial, is derivative under Rhode Island law. And that may be true, but again, Santiago Ramirez already addresses that, and even if somehow Rhode Island law were to apply, which it doesn't, it's the Federal Tort Claims Act, it's not sufficient for a claimant not to make his or her own loss of consortium claim on a timely basis to preserve it. Second, the District Court abused its discretion in awarding the value of Ura Zarmoda's homemaker services, even though she expressly disclaimed them, and even as the record lacked any evidence of their value. Federal Rule of Civil Procedure 54C permits relief even if the party has not demanded that relief in its pleadings. This court hasn't encountered a circumstance where a district court, on its own, awarded damages that a party expressly stated it was not seeking. The Ninth Circuit, however, has, in seven words, LLC versus Network Solutions, and there the Ninth Circuit concluded that a court should not second guess a claimant's tactical decisions and conjure up a damages claim when they have consistently represented it was seeking only a particular form of relief. What's your strongest evidence that there was a waiver of the homemaker claims? Well, Your Honor, there were at least three instances. The first is Ura Zarmoda did not claim these damages in her interrogatory responses. In both her pretrial memorandum as well as post-trial filing, she did not claim those damages. And in the proposed findings of fact that plaintiffs submitted, she expressly disclaimed, quote, loss of earning capacity. Those are at least three instances. Is loss of earning capacity the same as homemaker services in this instance? Semantically, perhaps. Functionally, no. The big problem is had the government had any notice of this surprise category of damages, there would have been an opportunity to cross-examine both Ura Zarmoda as well as her daughter about the very facts that are missing from the record. How many hours a day does she actually work in the house? How many days a week does she actually work in the house? And there also would have been an opportunity to present evidence on what the value of that waiver actually was. None of those things were ever in the record, and that's why this court should reverse on that point too. I'm sorry, Counselor. What evidence did come out at trial relative to homemaker services? Because, I mean, you don't disagree that pleadings can be amended to conform to evidence that comes out at trial. So what evidence actually did come out about homemaker services? There was evidence, Your Honor, that Ms. Ura Zarmoda kept her house. She cleaned the house. She kept care of her children. She cooked for them. She helped with her household tasks. But what was missing from the record was any basis for the district court on its own to calculate a figure about the hours worked, the days of the week worked, or their value. None of those things were in the record. The Rhode Island statute says that you don't need expert testimony in this area. So when the statute says that, what do you contemplate it means for a plaintiff to prove this without an expert? I think exactly what, Your Honor, I just enumerated, that essentially there would have to be some evidence that would correspond and support a district court's finding about hours worked a day, days worked a week, and the value of that work. None of those things were in the record. The fact that she did work, that was in the record, but nothing more. Well, the value of her work. Oh, sorry, Your Honor. I'm sorry. The way you're expressing it, it sounds like you're saying that the value of the work had to be proven with an expert, and the statute doesn't say that. Your Honor, I think there could have been a variety of ways to prove that or to discriminate. I'm asking you like what? If you don't call an expert, like what? There may have been, you could have had a fact witness say, I take care of children, I bill X amount of dollars. That person wouldn't need to be an expert witness. They could just be a fact witness. But none of that evidence was before the district court. The government's position is not that this is a fatal error because there was no expert. The problem is there was no evidence, period. Is there any Rhode Island law interpreting what this portion of the statute means? There is not, Your Honor, that we're aware of. Okay, thank you. Third, the district court clearly erred in its causation and related damages findings. First, the district court erred by concluding that Arizona's brain tumor could have been treated without surgery, and thus it ascribed injuries undisputedly resulting from that surgery to the government. Doesn't that issue really go to the weight of the evidence, and that's what exactly what Judge McConnell did? No, Your Honor, it does not go to the weight of the evidence for two reasons. The first is that every expert who testified said that surgery was inevitable, no matter when her tumor had been identified. The district court reached an absolute contrary decision on that without any evidence to support it. Does that matter if the delay was the problem, even if the surgery was not unavoidable, that the delay itself would cause the harm? Because there are two grounds for the district court's decision here, right? There are, Your Honor. On the second ground, with respect to delay, there's no evidence that supports that the delay itself made the surgery riskier. And, in fact, the issue was that the risks were equivalent. If she had been operated on earlier, a risk that she didn't face later was that a surgeon, to find a smaller tumor, would have had to cut through healthy brain tissue. There was less of that issue with a later diagnosed tumor. But may I just finish with one? Please finish. About the previous issue, the reason that this is not a matter of weighing evidence, beyond the fact that every expert agreed surgery was absolutely necessary, the alternative was utterly unavailable to Ms. Urizar-Mota. The alternative was available only one year before her surgery. It was experimental, and it was only for children. None of those things applied to Ms. Urizar-Mota. Okay. Thank you, counsel. Thank you. Thank you. At this time, would counsel for the appellees please introduce themselves on the record to begin? May it please the Court, Kaitlin Revins for the appellee. For seven years, Lucia Urizar-Mota walked into a federally funded health center seeking relief for headaches that were progressively debilitating her life. For seven years, the government held the simple key to a non-invasive treatment, an MRI, and they failed to do that. As a result, Ms. Urizar-Mota suffered permanent life-altering injuries that devastated her ability to care for her children and her home. After a trial on the merits, the district court awarded Ms. Urizar-Mota and her children damages for their proven injuries. The government seeks to undo this award, arguing lack of notice as to the children's loss of consortium claims and Ms. Urizar-Mota's losses as a homemaker. They further argue that the district court- Counselor, I'm not understanding why their notice issue doesn't have a lot of merit. The notice that she provided to the government did not list the children as claimants. It did not specifically list any damages that they suffered independently, and even under Rhode Island law, the loss of consortium is a separate cause of action even if it is derivative. Your Honor, in the SF-95, as well as the attached letter, Ms. Urizar-Mota made reference to her children and that her injuries that she suffered at the hands of the government's negligent interfered with, significantly interfered with, her ability to care for her children. Well, that describes her injury. I'm sorry? That describes her injury. It did. It describes her injury and that it interfered with her ability to care for her children. Because under Rhode Island law, this claim is derivative, the purpose of this notice requirement, allowing the government to investigate the claims and consider settlement, is achieved based on this information provided by her children because that underlying investigation is really focusing on the underlying tort. As a derivative claim, the loss of consortium claims cannot exist independently of her claims, and they wouldn't be based on any independent facts or theories. They all go back to the alleged negligence that the government committed in diagnosing her and treating her. Okay, but one of the issues here is, and let's assume there could be an identical case, and in that case, it's played the same way, and counsel for the plaintiff simply doesn't seek damages for the minors. Here you're arguing, yes, but when do you draw the line? Well, you would draw the line perhaps if the claims were not derivative in nature and if it would change the purpose or the results of the investigation. But here, if we're satisfying the purpose of this notice requirement, it focuses on investigating the claim. Okay, but did at any point during the trial, when was the damages for the minors requested? Was it requested at the end of the trial or? No. I mean, the damages for the minors was clear from day one in terms of as soon as the complaint was filed. There were claims for loss of consortium for her children. All throughout discovery, there was information exchange, both in interrogatories as well as deposition. Mrs. Urizar-Mara's eldest daughter, Delmy, was deposed and questioned extensively on the damages that her mother suffered and what those damages meant for Delmy as well as her three younger brothers. Let me ask you, is there anything specific in the discovery that says, we are seeking damages for a consortium claim for the children? Is there anything specifically set forth in interrogatories that is part of your prayer for relief? Yes. Or as a cause of action? Absolutely, Your Honor. Specifically? Interrogatories that were seeking loss of consortium for the children? Yes. Okay, so you disagree with what the counsel just said? If counsel represented that nowhere in the pleadings, whether it be the complaint and the interrogatories, that we requested loss of consortium, then yes, I strongly disagree with that. That was pled from the onset. Discovery was conducted on it at length. There was significant evidence presented at trial. And if that was the case, then the government was always on notice that you were seeking these damages. I suppose that's your argument, correct? Absolutely. Not only were they always on notice, but it allowed them to investigate the claims. The sum certain they bring up was the same. It included. Well, if you're saying the children were deposed, the government wanted to depose the children. And I assume, I haven't read the deposition transcripts, but I assume the government asked what were your damages, that type of question. Yeah, absolutely. How has this affected your life, the injuries to your mother? No question. That was all discovered through Delmy, her oldest daughter. And under this court's flexible and pragmatic approach. I'm sorry, Counselor. Counselor, are you saying that in the pleadings themselves, your pleadings, that it expressly says we're seeking loss of consortium? Or are you saying that you've worded it in such a way that the government should have understood that that's what you're requesting? No, Your Honor, I'm saying that in our pleadings, we explicitly request loss of consortium on the behalf of her four children. Is that in the prayer for damages, or is that in the statement of facts? I believe it is in. Where in the pleadings is it? Because I just didn't see it, but I'm going to go look, obviously. In the complaint, I believe there's a paragraph for each count where we seek relief for the children's loss of consortium. And under this court's flexible and pragmatic approach, it is to save any flawed claims that may be based on mere technicalities. So in terms of the government's argument that the initial admin notice was insufficient, we largely dispute that. Let me ask you, if the admin notice was insufficient, the children, they're still underage, correct? They are underage. So for all practical purposes, they would have to refile. But, again, they would still be able to pursue their claim because they're still underage. Correct, correct. They are underage, yes. And I'd like to move on to the homemaker services. I just want to make clear that those homemaker services are not economic damages. Counsel for the government has mischaracterized that throughout the briefing and argument today. But Rhode Island has a specific statute that governs these damages, and they are for unpaid domestic services, unlike lost wages, which are for paid services. Is there any case law characterizing the homemaker services as economic or non-economic? Not to my knowledge. I believe there's a workers' compensation case that addresses it in the context of a different statute that refers to homemaker services, but nothing specific on this statute. And the statute talks about fair value. That sounds economic in nature? Well, respectfully, any damages in a tort case are going to have an economic value in the sense that money is all that can be awarded in terms of damages. But for the homemaker services, the statute, fair value, as this court references, explicitly states it's not limited to the money that's expended to replace these services, which is, again, a big distinguishment from lost wages, and recognizes that these are not lost wages in the sense that there's an independent value to the loss of these services for Mrs. Yura's armada, independent of any other claims. But if that is so, as opposing counsel mentioned, there was no, it could be late testimony, but was there any late testimony saying how much these unpaid domestic services would be worth? No. There was no testimony because none is required. No expert testimony is required. And this is similar or akin to- Well, no expert testimony, but you need some testimony, right? Some factual basis. Of course. And there was overwhelming factual basis to support Mrs. Yura's armada's injuries and how they prevented her from serving the home, such as cooking, cleaning, shopping, caring for the children there. She not only testified to those, her daughter Delmy testified to those, and there was also a video that was- But how do you put a price tag to that? Because, again, it might vary household to household. Again, I acknowledge it's super valuable doing all those things, but how do you put that price tag? The same way you would put a price tag on damages for pain and suffering. There is no formula or computation. You use your own common sense, your own experiences, and your day-to-day life in terms of how much time you may put forward cleaning the home, doing laundry, cooking meals, and keeping the home. How do you- Oh, go ahead, Judge Thompson. I'm just wondering if there- Because I think you're right, I mean, because the statute specifically doesn't require an expert. I mean, do you- is there any legislative history available as to what the General Assembly was contemplating when it passed this law? Judge, my understanding is that the legislative history was to compensate women for their work in the home and show that they do have value outside of a paid employment. Beyond that, I'm unaware. But I can represent to this court confidently that the defense had notice of these homemaker services. They were in the letter sent as part of the administrative claim. They were in the complaint where we referenced that she can no longer care for the home. If I may finish briefly?  And they were conducted discovery on throughout trial, and extensive evidence was presented on the issue. So at this point in time, on behalf of the appellees, we would ask the district court's findings to be upheld. They are in sync with this circuit's precedent of a flexible approach of the notice requirement. And throughout all this, the government had noticed both of the loss of consortium claims, the homemaker claims, and then lastly, very briefly, the factual findings by the district court do not constitute clear error. There is no question there that the evidence presented was credible and supports those findings. So we would ask that you affirm the lower court's decision. Thank you. Two minutes remote. Please reintroduce yourself on the record to begin. Your Honor, this is Kevin Boland for the appellant. I just want to address two things, and first to clarify. With respect to the Federal Tort Claims Act, it is a presentment requirement. It's a prerequisite. A court cannot hear a case if somebody hasn't presented a claim. And that doesn't matter whether they are a minor or not. There's a certain statutory period in which they must bring the claim. The plaintiff had an opportunity, even within that period, to amend the claim to fix the omission of the Reyes plaintiffs. They didn't do it. They didn't do it before trial. So the issue is not once we moved to dismiss and the district court erred as a matter of law in permitting the Reyes plaintiffs' claims to proceed, whether we had notice of their claims. We certainly did. The point was they were not entitled to bring those claims because there was not a sovereign immunity waiver. On the second issue, with respect to homemaker services, again, the government is not asking that there be some sort of expert testimony. What we do need is notice that that issue is going to be a category of damages. We were told repeatedly it would not be. We were told at the end we're excluding that as a category. It was an incredible prejudice for the government not to then be able to respond. And with respect to the critical value here. Counselor, that's because you're equating loss of earning capacity with homemaker services. And plaintiff's attorney is saying that they're distinct. First of all, I agree that they are this. I think they are the same, Your Honor. The other issue, though, is when it came to a matter of...  I'm sorry? If we disagree? Well, even if you disagree... If we disagree that they're the same, we don't think they're the same. Even, Your Honor, if you think they are the same or distinct, the one thing that we did not have the... May I continue and finish? Please finish. The one thing we did not have the opportunity to do because we had no notice of the possibility of this category of damages was to produce evidence that would have said, well, look, the value might be X, it might be Y. Obviously, the government would have an interest in proving a lower value. They would have an interest in proving a higher value. But because no one knew that those damages were at issue, none of that evidence was produced by either party. Thank you, Your Honor. May I ask a point of clarification? Please follow up. Okay, sorry. Are you saying that because your assistant counsel just said to us that they had given you notice in the pleadings as well as in the discovery, is your argument that you didn't have notice based upon your allegation that that specific notice wasn't in the claim, or are you saying that you didn't have notice at any point during the proceeding period? Your Honor, we had no notice at any point in the proceeding. We asked to categorize damages, which Rule 26 asks a party to do as part of their initial disclosures. These weren't in their initial disclosures. They weren't disclosed in interrogatory responses. The only damages that were specified were pain and suffering and medical expenses. There was never any category of damages requested for homemaker services. Once the evidence was presented before Judge McConnell, you know, once the trial concluded, did, and obviously this is a bench trial, Judge McConnell wrote the opinion and awarded damages, but after the evidence was presented, did the government ask for specific itemization of possible damages? I know if this were a jury trial it would have been in the verdict form, but here there's no jury instructions. There were no jury instructions. I don't recall that the government asked for that because the government's understanding that there were only two types of issues, damage issues. One was lost, the loss, economic loss in a single respect, medical expenses, nothing else. The second category was pain and suffering. That is not something that anyone has ever asked to compute on the front end, and the District Court of Kidd, of course, did it on the back end. The problem is the first source of invoking this category of damages was the court itself in its findings of fact. We can't have rebutted something we did not even know was at issue. And unless the court has questions. Judge Stoltenlep, any other questions? I'm sorry, just one more question. Is it fair to assume that both sides gave closing arguments in this case? Yes, Your Honor, they did. And did plaintiff in closing arguments specifically set out what category of damages she was requesting? My memory of it was that they asked for pain and suffering and medical expenses. To my knowledge, I was in the courtroom, Your Honor. There was never any request or utterance of damages for loss of homemaker services. Thank you. Thank you, Your Honor. Thank you, Counsel. That concludes argument in this case. Let's call the next case.